Nicholson, C. J.,
delivered the opinion of the Court.
The Memphis Gayoso Gas Company sued S. P, Bead in the Circuit Court of Shelby county “for $300 on subscription in and to the Memphis Gayoso Gas Co. of stock made by the defendant, which said subscription for said sum of money was- made and due before institution of this suit; and said sum, with interest, is still due and unpaid.” Issues were made upon the pleas, one of which was, a failure of consideration, and another, non-assumpsit.
The cause was tried at the September Term, 1870, of the 1st Circuit Court of Shelby, when there was a verdict and judgment for the plaintiff for $353. After motions in arrest of judgment and for a new trial were overruled, defendant appealed in error to this Court.
It appears from the bill of exceptions that on the *547 23d of May, 1866, the Legislature of the State passed an Act incorporating John Donovan and- seven others, “under the' name and style of the Memphis Gayoso Gras Company, with all the rights, powers, and privileges conferred upon the Edgefield Gas Light Company.” This latter Company was incorporated by the same Act, by the first section of which “the Company is established with a capital of $25,000, which may be increased, from time to time, to $300,000, and the capital stock shall be divided into shares of .$50 each; and by the sixth- section A. V. S. Linds-ley and others were appointed to open books to receive subscriptions to the capital stock of said Company; and as soon as $25,000 are subscribed, may hold an election for Directors, and organize said Company.
It appears that on' the 27th of October, 1866, stock was subscribed amounting- to about $30,000, defendant being a subscriber for twenty shares, amounting to $1,000. The subscribers whose signatures were made to the subscription paper agree to subscribe the number of shares and amounts respectively set opposite their names of the capital stock of the Memphis Gayoso Gas Co., etc., and agree to pay the same as it may be called for under said charter, and by the rules of said Company.
On the 30th of November, 1866, after subscriptions to an amount exceeding $25,000 had been made, the subscribers met and elected the Directors of the Company, who proceeded to complete its organization by the election of a President and Secretary.
It appears that defendant was represented in the *548 meeting of stockholders for organization, and that his. stock was voted by proxy, and that he was voted for as one of the Directors, but was not elected. At the election of Directors for organization more stock was represented and voted than $25,000. The subscription by defendant of $1,000 made the amount then subscribed $25,500, and about $5,000 more was afterward subscribed before the election of Directors,, all of which was voted in the election.
No calls for payments on stock had been made-prior to December 12, 1866, when the Board of Directors passed the following resolution:
“Resolved, That the President and Secretary be requested to open books of subscription to the amount of six hundred thousand dollars ($600,000), and that said books be kept open for thirty days, unless the said amount be sooner subscribed, and that all subscribers be required to pay ten per cent of the amount of their subscriptions when said subscription books are closed, and the balance in instalments, as shall be called by the Board of Directors.”
It is proper here to state that on the 4th of December, 1866, prior to the adoption of this resolution, the Legislature had amended the charter of tho-Memphis Gayoso Gas Co. by authorizing the President and Directors to increase the stock in the Company to a sum not exceeding one million of dollars ($1,000,000). . It appears that during the thirty days for keeping the books open for additional subscription, the amount subscribed, including the original subscriptions, was about one hundred and jity thousand dollars *549 ($150,000), and at the end of the month the books were closed.
The call of ten per cent in the order of December 12, 1866, was not paid many of the new subscribers, and by none of the old ones, but it was never revoked or declared void.
On the 17th of September, 1867, a call of ten per cent, was made by the Directors, and on the 6th of November, 1867, the Directors, at an informal meeting, authorized the President to make such call on the stock subscribed as may be necessary for carrying on suits of the Company, and do such other- acts as, in his judgment, are for the interest of the Company. .'On the 7th of November, 1867, the President made a call of twenty per cent., which was published in a newspaper, and signed by the President and Secretary officially.
The suit was brought to recover the two calls of ten per cent and twenty per cent, made on .the 17th •of September, 1867, and the 7th of November, 1867, neither of which defendant had paid.
It was proved by plaintiff that at a meeting of 'the Board on the 26th of October, 1869, he reported his action in calling twenty per cent, under the resolution of November 6, 1867, and that the same was approved, though this does not appear on the minutes of the Board.
The first ground relied on for reversal, to which we will direct our attention is, that the eourt erred in overruling the motion in arrest of judgment. It is said that the declaration is defective in not stating *550 what the subscription was, what calls had been made, and that payment had been demanded. The averment in the declaration is, that plaintiff sues defendant for $300 on a subscription in and to the Memphis Gay-, oso Gas Co., of stock made by defendant, which said subscription for said sum of money was made and due before the institution of the suit. If it be con-. ceded that the promises in a subscription are conditional, and are governed by the charter, when it is averred that such subscription has been made for the amount sued for, and that it was due before suit, the fair legal intendment of the language is, that the defendant has failed to pay the amount due according to the terms' and conditions of the charter, and there-' fore that the amount sued for is due. The aver-, ments convey a reasonable certainty of meaning, and; show a substantial cause of action. This is sufficient under Sec. 2884 of' the Code.
But, in the next place, the defendant took no exception to the sufficiency by demurrer. He went to trial under the general issue, and even if the cause of action was defectively stated, it was too late after verdict to raise the objection. In such case we will presume that the defects in the averments have been-supplied in the proof. 2 Hum., 419; 4 Hum., 306; 2 Sneed, 191.
It is insisted in the next place that the defendant is not liable to pay the two assessments sued for, because, although his subscription made up the full' amount of $25,000, yet before the assessment the Directors had fixed the amount of the capital stock,. *551 first, at $300,000, and then at $600,000, and no legal assessment for the general purposes of the corporation could be made until the amount so fixed by the Directors had been dona fide subscribed.
No principle of law is better settled than that the' subscription for stock in a corporation is to be governed by the terms and conditions contained in the charter which gives it a corporate existence. From this general principle it is a necessary sequence that in all corporations in which the amount of the capital stock is fixed by the charter, or in which the-amount is fixed by the agreement of the subscribers,, or in which the charter requires the Directors to fix the amount, no valid assessment on the stock subscribed can be made, until the whole amount of the stock, either fixed by the charter or. by the stockholders, or by the Directors, has been subscribed. This is a condition precedent which must be complied with before the subscribers can be legally called on, to respond to calls or assessments. The authorities-to which we have been referred fully sustain these positions.
But the difficulty in the present case does not arise as to the correctness of these principles, but it is in determining how far they are applicable to the facts of the present case. It is assumed for the defendant that although the minimum capital of $25,000, fixed by the charter, was subscribed, and the company was organized under that subscription, yet that before the assessments sued for were made, the Directors, as they had a right to do by the charter, *552 bad fixed the amount of the capital at $300,000, and then at $600,000, and that the whole amount of capital so fixed had not been and never has been subscribed.
To determine Avhether this statement of the facts. of the case is correct, it becomes necessary to look to the provisions of the charter, and the proceedings of the Board of Directors bearing upon this question.
As we construe the Act incorporating the Memphis Gayoso Gas Co., it confers upon the corporation all the rights, powers, and privileges of the Edgefield Gas Light Co. That Company was invested with corporate franchises with a capital of $25,000, with the privilege of increasing it, from time to time, to $300,000, and with the power, to organize by the election of Directors and officers, as soon as the capital stock of $25,000 should be subscribed. The Memphis Gayoso Gas Co. came into existence with the same rights, powers, and privileges, with the additional privilege of increasing its stock, from time to time, to a million of dollars ($1,000,000).
The capital stock of the Memphis Co., therefore, was fixed by its charter at twenty-five thousand dollars ($25,000). Upon a subscription of that amount, the subscribers had the right- to effectuate their corporate existence by organizing for the transaction of business in the exercise of the franchises conferred by the charter. It can not be questioned that upon the organization of the Company, under the subscription of $25,000, the Directors could have proceeded to make *553 Valid assessments on the stock, and to have enforced the assessments by suit.
It is proper here to bear in mind that each subscriber for stock made his subscription to be governed by the terms and conditions of the charter. One of these conditions was, that whenever $25,000 was subscribed, his promise to pay his subscription was no longer conditional, but it became absolute. Another was, that when $25,000 was subscribed, the means of enforcing the subscription was to be acquired by organizing, and thereby becoming capable of suing. And a third term and condition annexed to the subscription was, that after the organization the Board of Directors would have the power, in their discretion, to increase the capital stock, from time to time, to any amount not exceeding one million of dollars ($1,-000,000). But such increase of the capital stock could work no change in the rights or liabilities of the original subscribers, for the reason that the corporation continues to be the same entity, and for the further reason that it was part of the contract of the original subscribers that the Directors should have the power to increase the capital stock.
But there is still another term or condition which was involved in the original subscriptions, and that is, that if the Directors should exercise their power of changing the amount of the capital stock, and should fix it at any higher amount, they would thereby lose their right to make and enforce assessments on the original or the new subscribers, until the whole amount of the capital so fixed should be subscribed.
*554 This, then, brings us to the real question in the ease, Did the Board of Directors increase and fix the amount of the capital stock?' If so, Did they make the assessments sued for before the whole amount of the increased capital so fixed was subscribed? The resolution of the Board of Directors, adopted on the 13th of December, 1866, is as follows:
“Resolved, That the President and Secretary be requested to open books of subscription to the amount of $600,000, and that same books be kept open for thirty days, unless the said amount be sooner subscribed,” etc.
It is shown in the bill of exceptions that the subscriptions obtained under this opening of the books amounted to $150,000, inclusive of the original subscriptions, and that at the end of the month the books were closed.
It is insisted for defendant that the legal import of this resolution was to increase the stock to $600,-000, and to fix that as the amount of the capital. For the plaintiff it is insisted that the resolution means that the books should be opened for thirty days, and if within that time the amount of $600,000 should be subscribed, that amount should, in that event, be fixed as the capital stock; but if that amount should not be subscribed within thirty days, then the books should be closed, and that whatever amount was subscribed should be fixed as- the amount of the capital stock. And that as the amount subscribed within the thirty days was $150,000, and as the books were then closed, that amount was fixed as the capital stock. *555 In support of this construction of the resolution the plaintiff's counsel relies upon the concluding provision of the resolution as follows: “And that all subscribers be required to pay ten per cent, of the amount of their subscriptions when said subscription books are closed, and the balance in instalments, as shall be called by the Board of Directors." There is no ambiguity in this language; it makes a definite call on all subscribers to pay ten per cent, on their subscriptions when the books are closed. If the whole $600,-000 are subscribed before the thirty days expire, then the books are to close, and every subscriber is then to pay ten per cent.; but if the whole $600,000 is not subscribed before the thirty days expire, then at the end of the thirty days the books close, and every subscriber is to pay ten per cent, on his subscription. It is manifest, therefore, that the true interpretation of the resolution is, that the Board of Directors intended to fix $600,000 as the capital stock, if that amount should be subscribed within thirty days; but if that amount should not be subscribed, then whatever amount should be subscribed at the end of the thirty days, that amount was to be the capital stock. When the thirty days expired the amount* subscribed was $150,000. The books were then closed, and that fixed the capital stock of the Company for the time being at $150,000.
We find no evidence in the bill of exceptions showing that there was any further increase of the capital stock before the two assessments sued for were made. It follows upon the principles already laid *556 down, that when the assessments were made the whole amount of the capital stock, as fixed by the Directors, had been subscribed, and therefore that the assessments were legally made.
The general principle which governs the case is thus laid down in 1 Redf. on Railways, 175: “It is an essential condition to making calls in those companies where the number of shares and the amount of capital is fixed, that the whole stock shall be subscribed before any calls can be lawfully made.”' This position is supported by the numerous cases cited in the note, with which we have been furnished by counsel, as well as by other cases. This principle applies alike to cases in which the charter of incorporation has fixed the amount of capital and number of shares, .and to those in which the charter authorize the Companies, when organized under fixed capitals, to increase their capitals. When so increased, the amounts fixed become the capitals which must be subscribed before legal assessments can be made. The cases of Netter v. West Cambridge R. R. Co., 6 Grey, 87; and York & Cumberland Railway v. Pratt, 40 Maine, 447, strongly illustrate and support the general principle in its application to the facts of the case before us. The result is, that when the action of the Board of Directors on the 13th of December, 1866, is properly construed, the case falls strictly within the general principle announced, by which defendant is liable to pay the calls sued for, unless there is some other objection which releases him.
It is next maintained for defendant' that the' call *557 of ten per cent, made by the Directors in the resolution of December 13, 1866, when the books were opened for new subscriptions, was void, and for that reason no subsequent calls could be enforced; and for this position the case of Stoneham Branch R. R. Co. v. Gould, 2 Grey, 278, is relied on. That case was-decided upon the general principle already recognized— all of the stock had not been subscribed when the-call was made, and on that ground the call was void. It was held that the sale of the share of the subscriber, under the statute of Massachusetts, for his-failure to pay all of his assessments, one of which was void, was unauthorized. This does not decide that the Directors could not have abandoned or waived the-void assessment and sued for those that were good.
But in the present case it is by no means clear that the call made on the 13th of December, 1866',. was not legal and binding. The call was made before the new subscriptions were made, but it was only to be operative simultaneously with the subscriptions. But whether valid or invalid, it is not material to inquire, as the Directors have made no effort to enforce it, and the same may well be regarded as abandoned and waived.
The next objection taken is, that the call for twenty per cent, sued on cannot be enforced, because it was-made at an informal meeting of the Board of Directors, and because the call was made by the President and Secretary of the Board and not by the Board-itself. It is a sufficient answer to the first of these-reasons, that the fact that, by the rules of the Com *558 pany, the Directors were to have regular meetings, it does not follow that they could not have special or informal meetings when the interest of the Company required it. This was a necessary power incident to the faithful discharge of their trust. If the meeting was regularly recorded as part of their official action, it was legal and binding. To the other objection, it may be answered, that it appears that the President was authorized by the Board to make the call, and although in advertising it he did so in his capacity as President alone, he was acting as the agent of the Board, under express authority, and his action upon well settled principles is to be regarded as the action of the Board itself. Besides, there is no evidence that the action Avas repudiated or objected to by the Board; but on the contrary," it is clear that it was acquiesced in, adopted and ratified by the Board.
The charge of the Circuit Judge was in accordance with the views of the law herein expressed, and the verdict of the jury was sustained by the proof.
The judgment is therefore affirmed.