Mountain View Development Company *v.* F. C. Burnett, C. F. Rainey, Mrs. Ben. S. Boyd *et al.*\*

(*Knoxville*, September Term, 1931.)

Opinion filed March 7, 1932.

---

\*As to waiver of requirement that stock must be fully subscribed, see 7 R. C. L., 235; R. C. L. Perm. Supp., p. 1945.

On requirement that all stock be subscribed, see 7 R. C. L., 231, 232; R. C. L. Perm. Supp., p. 1945.

On stock subscription as contract, see 7 R. C. L., 221; R. C. L. Perm. Supp., p. 1943; R. C. L. Pocket Part, title Corporations, section 191.

ELY, BUHL & ELY, for plaintiff in error.

JENNINGS, SAXTON & WRIGHT, for defendants in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

These consolidated cases, three in number, were instituted by the plaintiff, Mountain View Development Company, against the respective defendants, to enforce collection of subscriptions which they made to its capital stock. A petition was circulated among the residents of a particular locality in Knoxville, in January, 1924, soliciting subscriptions for stock in a corporation to be created, which petition is as follows:

"We, the undersigned, hereby subscribe for the amounts of stock, set opposite our respective names, of the Mountain View Development Company, a corporation to be chartered and organized under the laws of the State of Tennessee, said stock to be paid for as called by the President and Board of Directors.

| "Name | Amount |
|---|---|
| "F. C. Burnett | $100.00 |
| "C. F. Rainey | 200.00 |
| "Ben S. Boyd | |
| "Mrs. Ben S. Boyd | 500.00," etc. |

There were sixty-two names in all to the petition, including many prominent citizens of Knoxville, the sums subscribed varying from $100 to $1,000, and the total subscriptions being $23,500. We have only copied the names of those sued in these cases, and we might add that they did not head the list but their names appeared further down.

The corporation was chartered on February 12, 1924, and in the charter the capital stock was fixed at $25,000. The purpose of the corporation, as expressed in its charter, was "buying, holding, developing, improving, renting and selling real estate, and the necessary incidents thereto." The primary purpose of the organization was to buy up real estate in a designated area owned by undesirable persons so as to have a restricted and more desirable neighborhood. All of the subscribers were property holders in what we might term the improvement district. The corporation was duly organized, collected subscriptions in the sum of $18,000, purchased a lot of property, and has been carrying on the business for which it was organized ever since. The Boyds paid $50 on their subscription. The other defendants have paid nothing. A few months after the organization was perfected the defendants moved away from that section of the city. They requested the officials of the company to release them from their subscriptions, which was not done; and failing to pay, upon demand, they were sued. The trial court dismissed the suits without assigning any reasons therefor. The Court of Appeals reversed the lower court and rendered judgments in favor of plaintiff.

We have carefully considered the evidence and are unable to find sufficient facts to base a waiver or an

estoppel upon. These defendants did not participate in any of the meetings, authorize the purchase of property, or the making of contracts, and neither said nor did anything to mislead the plaintiff. See *Anderson* v. *Railroad,* 91 Tenn., 50; *Morgan* v. *Landstreet* (Md.), 19 Ann. Cas., 1247; 7 R. C. L., 235; 14 C. J., 545.

■ No rule is better settled than that which provides that where the capital stock of a corporation is fixed, it is implied in every contract of subscription, as a condition precedent to liability thereunder, that all the capital stock must be subscribed. 7 R. C. L., 231; 14 C. J., 538; Note, 93 Am. St. Rep., 368.

In *Read* v. *The Memphis Gayoso Gas Co.,* 56 Tenn., 545, 551, this Court said:

"No principle of law is better settled than that the subscription for stock in a corporation is to be governed by the terms and conditions contained in the charter which gives it a corporate existence. From this general principle it is a necessary sequence that in all corporations in which the amount of the capital stock is fixed by the charter, or in which the amount is fixed by the agreement of the subscribers, or in which the charter requires the Directors to fix the amount, no valid assessment on the stock subscribed can be made, until the whole amount of the stock, either fixed by the charter or by the stockholders, or by the Directors, has been subscribed. This is a condition precedent which must be complied with before the subscribers can be legally called on to respond to calls or assessments. The authorities to which we have been referred fully sustain these positions."

The rule thus announced has been followed in many subsequent decisions. In all of our cases, however, the

capital stock had been fixed before subscriptions were had. The rule rests on the very substantial basis of public policy and the protection of the rights of individual members. See annotations in 16 Ann. Cas., 1254, and 93 Am. St. Rep., 369.

A subscription to stock is a contract. This Court, in *Railroad Co.* v. *Gammon,* 37 Tenn., 567, 570-571, said:

"The subscription for shares in the stock of the company, was a contract; and the interest thereby acquired was a sufficient consideration to enable the company to support an action against the subscriber for the amount subscribed. Angell and Ames on Corporations, ch. 15, sec. 517. By his subscription for a certain number of shares, at a certain sum, he became liable for the amount of his subscription, on the same principle that the maker of a promissory note renders himself liable. Ibid, sec. 518. The consideration to sustain such a promise, is raised by inference of law from the subscription itself, and the privileges thereby conferred; and from the same circumstance, the law will infer a duty to pay for the stock, and an implied obligation of equal force with an express contract; where nothing appears repugnant to such a construction. By the subscription, the party binds himself to take the shares, and to pay for them, on the terms and conditions expressed in the subscription paper. Ibid, 519."

Such a contract, like all others, is to be construed according to the intention of the parties, and if the court can see from the surrounding facts and circumstances and the conduct of the parties that the subscriber did not contemplate that any definite sum should be subscribed before he was to become bound, then the general rule does not apply. In Maine, Texas, and Wisconsin

a distinction is made between subscribers who become such after and those who become such before incorporation. *Skowhegan, etc., R. Co.* v. *Kinsman,* 77 Me., 370; *Belton Compress Co.* v. *Saunders,* 70 Tex., 699; *Milwaukee Brick, etc., Co.* v. *Schnoknecht,* 108 Wis., 457.

As previously stated, the primary object which these parties had in mind was the acquiring of certain property in order to improve their neighborhood. So that the parties in making their subscriptions did not provide, as is usually the case, that the capital of the corporation was to be a specified sum, or that they were to be bound only in the event a stated sum was subscribed. The parties did not have in mind any definite sum. When the subscriptions totaled $23,500 they decided that this was sufficient to carry on the purposes of the organization. If they had fixed the capital at that sum, no question could have been raised. Thinking, perhaps, that others in the locality might wish to join them, they fixed the capitalization at $1500 more than had been subscribed. No complaint was made as to this, and these defendants never entered any protest, or based their refusal to pay upon the ground that the authorized capital had not been fully subscribed. In fact, it is inferable from the record that this was an afterthought on the part of their counsel which he injected into the case near the close of the hearing in the circuit court. This in itself is a circumstance tending to show that the defendants, in making their subscriptions, did not have in mind any particular sum to be raised.

In the annotation to *Morgan* v. *Landstreet,* 16 Ann. Cas., 1255, it is said: ''Consequently where the articles of association, or the circumstances which affect the interpretation of the agreement to take stock, show an in-

tention that the corporation shall be fully organized and commence business before shares amounting to the full capital stock have been subscribed, the rule requiring subscription of the whole of the capital stock does not apply.'' (Citing numerous cases including that of *Sweeney* v. *Tennessee Cent. R. Co.*, 118 Tenn., 289.)

An admirable statement of the exception to the general rule is contained in the annotation to *Gettysburg National Bank* v. *Brown,* 93 Am. St. Rep., 376, and is as follows: ''Unless the amount payable were certain, there could, of course, be no enforceable liability where the capital stock was not fixed, but it is not perceived why the circumstance that the amount is fixed should override the general rule that the subscription of the entire capital stock is a condition precedent to liability on the subscription. This rule is, however, based on an implied condition, and the circumstance that the amount subscribed was certain, together with the fact that no definite amount of capital stock was provided for may well show that no such condition of liability was in the minds of the subscribers.''

Where the amount of the capital stock is fixed by charter or by statute before the subscription is obtained, the general rule applies. Also where the subscription agreement states what the capital stock is to be. Otherwise the court must determine from the paper itself, aided by the surrounding facts and circumstances, what the parties had in mind.

This is an exceptional case, and, in our opinion, the parties did not intend that a definite sum should be raised in order to bind them for the payment of their subscriptions.

 It is also insisted that defendants are not liable because some of the subscribers were insolvent when they agreed to take stock. This does not sufficiently appear from the record to require further response. *Heiskell* v. *Morris,* 135 Tenn., 238.

Writ denied.