WALLACE et al. v. DUEL.—79 S. W. (2d) 595.

Eastern Section. June 23, 1934.

Petition for Certiorari denied by Supreme Court, November 30, 1934.

Petition to Rehear denied February 23, 1935.

Fowler & Fowler and Neal B. Spahr, all of Knoxville, for plaintiffs in error.

Clarence A. Templeton, of Jellico, for defendant in error.

PORTRUM, J. This suit was instituted before a justice of the peace by the Tennessee State Press Company, a corporation, to recover the unpaid balance of $80 on a subscription contract for one share of the capital stock of the company, and pending the suit the company went into the hands of receivers, who intervened as parties plaintiff, seeking the same relief against the defendant. The case was carried to the circuit court and there tried before the court and a jury, and the defendant was successful in defeating a recovery. His contentions were: First, that the subscription contract was procured through fraud; and, second, that he is not liable upon the contract as a matter of law.

There are many assignments of error, but if the contract is not binding as a matter of law, then they become immaterial. The subscription contract reads as follows:

"No. 3329                                              $100.00

"Tennessee State Press Company
"Knoxville, Tennessee

"I hereby subscribe for one share of common stock of the Tennessee State Press Co., a company with a proposed capital of $500,-000.00 to be incorporated under the laws of the state of Tennessee. Par value stock to be $100.00 per share. The object of said undertaking is the organization of a company for the purpose of establishing and publishing a newspaper at Knoxville, Tennessee, in behalf

of the welfare and interests of the people of this section and the promotion of good citizenship and better government in Tennessee. Since all stock will be accounted for on the same basis, there being no free nor gratuitous stock to be issued in any case, all risk and cost of organization to be equitably shared by all, it is therefore recommended that each subscriber for stock shall contribute a cash payment of 20% of his or her subscription with the understanding and agreement that such part of said funds as will be necessary to successfully complete the undertaking may be so used. I have this day made a subscription for $100.00 and a cash payment of 20% thereon to be used according to the provisions herein and agree to pay the unpaid portion of my subscription according to the terms hereof. The unpaid part of this subscription shall be due and payable to Joseph W. Hodge, agent and Treasurer, who is properly bonded for the proper handling of all funds provided for the aforesaid purposes. Payment of said subscription, shall be due and payable as a whole in one payment upon receipt of a call by order of the company, or in monthly payments according to the desires of the maker, such payments not to exceed ten equal and consecutive monthly payments or in such shorter time as the maker may desire. No interest will be charged on these payments except when such payment may become delinquent, in which case such delinquent payments shall bear 6% interest. Agreements not contained herein with reference to this contract shall not be binding upon the agent nor the company. It is understood and agreed that as soon as the company is incorporated and full payment has been made upon my subscription that I shall receive certificate of stock in said company representing the amount of my subscription. Stock full paid and non-assessable. Subscriptions shall be payable at the home office in Knoxville, Tennessee, or at your local bank. You should receive notice of the receipt of this subscription within five days from the home office.

"[Signed] G. R. Deuel (name)
"101 Church St., Jellico, Tenn.

"Date 5/19, 1931,
"A. N. Cate, Salesman."

"A subscription to stock is a contract. . . . "Such a contract, like all others, is to be construed according to the intention of the parties. . . ." Mountain View Development Co. v. Burnett, 164 Tenn., 210, 215, 46 S. W. (2d), 809, 810.

A subscription to the capital stock of a corporation to be thereafter organized is a continuing offer which only becomes binding upon the subscriber by the legal formation of the corporation and the acceptance of the charter by the incorporators.

"If the agreement is not made as a step authorized by statute in the process of forming the corporation, but depends upon the com-

mon law, it is a mere offer by each subscriber to the corporation not yet in existence to take stock, and thereby became a shareholder; and when the corporation is organized and accepts the offer, there is a binding contract of subscription between the corporation and the subscriber, by virtue of which, ipso facto, the subscriber, becomes a stockholder, with all the rights and privileges, and subject to all the liabilities, of a shareholder, and the subscription may be enforced by the corporation. Before the corporation is formed, the subscriptions, as we shall see, are not binding, for there is no consideration or mutuality; and, besides this, the other party to the contract is not yet in existence. But the formation of a corporation and acceptance of the subscription supplies the element of consideration and the other party, and renders them binding.'' Clark on Corporations, secs. 93-97, p. 264; Athol Music Hall Co. v. Carey, 116 Mass., 471; Buffalo & J. R. Co. v. Gifford, 87 N. Y., 294; Bullock v. Turnpike Co., 85 Ky., 184, 3 S. W., 129; Gleaves v. Turnpike Co., 33 Tenn. (1 Sneed), 491; Augusta Mfg. Co. v. Vertrees, 72 Tenn. (4 Lea), page 75; Note 61 A. L. R., 1463, page 1465.

The statute under which this corporation was organized (section 3709 et seq. of the Code of 1932) makes no modification of the common law as to the liability of a subscriber prior to the organization or formation of the corporation.

The subscription contract, therefore, was a continuing offer which became binding upon the subscriber when the corporation was formed and the charter accepted. And to then become binding the offer must be accepted as made; in other words, it is not within the power of the incorporators to change the terms and provisions of the offer made by the subscriber, and work an acceptance of the subscription by the subsequent formation of the corporation. To determine if this was done, we must ascertain the terms of the offer, and were the terms changed prior to the formation of the corporation.

The subscription contract was executed on May 19, 1931; the application for the charter was signed by the incorporators on May 12, 1931, and the proposed charter filed in the office of the Secretary of State May 14, 1931; on May 20, 1931, the incorporators met and organized by electing a chairman and secretary, and entered this action upon their minutes: ''The charter was not accepted at this time, but was deferred until the completion of the required amount of signatures to be obtained.'' However, at this time the formation of the corporation was not complete, for the charter and Secretary of State's certificate had not been recorded in the register's office of Knox county, as required by section 3716 of the Code.

On August 26, the incorporators again met; the purpose of the meeting was stated: ''The purpose of the meeting was to effect an organization, and to take action on such other matters as was desired.'' An organization was perfected by the election of a presi-

dent, vice president, treasurer-secretary, and the appointment of a committee with a secretary and manager. But at this time no valid charter was in existence for the failure to record the same as above provided.

On September 28, a called meeting of "directors" met and there was a proposal for an amendment of the charter appearing upon the minutes as follows:

"It was also decided and ordered that a call for amendment to the charter be issued and sent to all stockholders, providing that the amount of capital stock required in the charter for the beginning of business be reduced from $250,000 to $125,000 and that proxies be mailed to all subscribers requiring that same be executed and returned to the office of the company for the purpose of being voted to carry out said proposed amendment. There being no further business the meeting adjourned."

On September 30, at another meeting of the "directors," a resolution was adopted to amend the charter as above indicated, and a called meeting of all "stockholders" was called for October 14, to take action upon the proposed amendment.

Notice of this meeting was sent to all subscribers of the capital stock, stating the purpose of the meeting, and requesting them to be present and participate or to send their proxies, since the statutes require a majority of all stockholders to assent to an amendment to the charter of incorporation. The defendant received one of these notices, but he did not attend or send his proxy. The meeting was held and adjourned to a later date, and the amendment was approved by the so-called stockholders. The amendment was filed in the Secretary of State's office October 23, 1931, and the original charter, together with the amendment, were recorded in the register's office in Knox county on October 29, 1931, at which time, under the provisions of the law, the corporation became an entity. Thereafter the directors, who were also incorporators, met and called a stockholders' meeting, and perfected a permanent organization. After this organization the minutes show no call by the corporation for the payment of the capital stock, but prior to the formation of the corporation, the so-called directors had made a call upon the subscribers for the payment of their subscriptions.

■■ At the date of the defendant's subscription to the capital stock of the corporation, the charter had been prepared and filed in the office of the Secretary of State, and contained the restricted provision that business would not be begun until $250,000 of the capital stock had been sold, in conformity with the incorporating statute. The agent and promoter of the corporation made this fact known to the defendant, and the fact was used as an inducement for the sale of the stock. We think the charter necessarily incorporated itself within and was a part of this contract, for the subscriber's rights

and liabilities were to be merged in the corporation when formed. His offer to become a stockholder in the corporation contemplated the corporation proposed, a charter of which had been prepared, and the terms of which had been represented to him. His offer could not be modified or changed without his consent by the incorporators; perhaps had the corporation been legally formed, the stockholders could have amended the charter as provided by the statute, because the legal act of the corporation when organized was within the contemplation of the subscribers, but it was not contemplated as a matter of law that the incorporators could change or modify the contract before the incorporation. We think the attempt of the incorporators to change the original charter without the consent of the subscriber affected the change in the subscriber's contract, and the subequent perfection of the amended charter did not act as an acceptance of the original offer of the subscriber, binding him to the new terms resulting from the amendment. Especially is this true since $250,000 of capital stock was never sold prior to the beginning of business, or since the beginning of business for that matter. And we think this a material change, since a corporation of twenty-five hundred subscribers, or subscribers to $250,000 of the capital stock, is much stronger, and in less likelihood of bankruptcy, than a corporation of $125,000, or subscribers to capital stock of that amount, especially in the operation of a hazardous business such as a newspaper publication.

██ ██ ''No rule is better settled than that which provides that, where the capital stock of a corporation is fixed, it is implied in every contract of subscription, as a condition precedent to liability thereunder, that all the capital stock must be subscribed. . . . '

'' 'No principle of law is better settled than that the subscription for stock in a corporation is to be governed by the terms and conditions contained in the charter which gives it a corporate existence. From this general principle it is a necessary sequence that in all corporations in which the amount of the capital stock is fixed by the charter, or in which the amount is fixed by the agreement of the subscribers, or in which the charter requires the Directors to fix the amount, no valid assessment on the stock subscribed can be made, until the whole amount of the stock, either fixed by the charter or by the stockholders, or by the Directors, has been subscribed. This is a condition precedent which must be complied with before the subscribers can be legally called on to respond to calls or assessments. The authorities to which we have been referred fully sustain these positions.' '' Mountain View Development Co. v. Burnett, 164 Tenn., 210, 214, 46 S. W. (2d) 809, 810.

██ The plaintiff in error relies upon the notice of the so-called stockholders' meeting to amend the charter, and the failure of the subscriber to act upon the notice as a waiver or an estoppel upon

him. It may be said here as said in the case of Mountain View Development Co. v. Burnett, supra:

"We have carefully considered the evidence, and are unable to find sufficient facts to base a waiver or an estoppel upon. These defendants did not participate in any of the meetings, authorize the purchase of property, or the making of contracts, and neither said nor did anything to mislead the plaintiff. [Citing cases.]"

The record of this corporation was open to any creditor who could have discovered from the minutes that the defendant was not liable upon his subscription, and his failure to attend a meeting of the stockholders when he was not in fact a stockholder did not justify any one in relying upon his nonaction as an estoppel, nor as a waiver of his rights as they then existed. He owed no one a duty to participate in this unauthorized proceeding.

We are of the opinion there was no error in the judgment of the lower court, and it should be affirmed, with costs.