Allread, J.
This is a proceeding to review a judgment of the municipal court in an action of forcible entry and detention.
The action in the municipal court was by the landlord against the tenant upon condition broken.
The defendant below sought reformation of the written lease upon the ground of mistake. Reformation was refused and an instructed verdict in favor of plaintiff below was returned.
We may assume that the reformation was properly refused, and consider the case upon the action at law.
It appears that Dietrich, the plaintiff in error, went into possession about March, 1918, under a verbal contract for a written lease. He remained *244 in possession under the verbal agreement until March 12, 1919, when a written lease was executed for a term of three years.
The material provisions of the lease are as follows:
“ * * * being a storeroom, together with basement underneath located at No. 8017 Euclid Avenue. The premises are leased to the lessee upon condition and with the understanding that he will use the same only as a store for the sale of electrical goods and appliances and such other articles of merchandise as are usually kept in such stores. * * * If any default be made in any of the conditions, covenants or agreements herein contained, or there be any refusal or neglect to perform the same on the part of the said lessee * * * then and thenceforth it shall be lawful for said lessor or for the lessor’s representatives to avoid this lease and re-enter upon said premises without any formal notice.”
It appears that the premises leased consist of a business room with a frame partition near the middle and another partition in the rear part. The rear apartments were equipped with a hot water tank, toilet, and a sink. The undisputed testimony shows that the rear rooms had been used by previous tenants as living quarters, and that Dietrich from the time he took possession under the verbal lease used the same as living quarters. Bach,' the agent of the plaintiff below, assured Dietrich that he might so use the same, and ffeins, succeeding agent, had full knowledge of Dietrich’s occupancy for living purposes.
*245 The front room was occupied continuously by Dietrich as a store for the sale of electrical goods in accordance with the terms of the lease.
The forfeiture is based upon the occupancy of the rear part for living purposes.
It is well settled that forfeitures both in equity and at law are not favored. No better statement of this principle can be found than that by Judge Spear in Webster et al. v. Dwelling House Insurance Companys 53 Ohio St., 558, at page 563: “Relief against forfeitures is matter of equitable cognizance, but rules applicable to the subject are resorted to in courts of law, and there seems no good reason why the principles which govern courts of equity should not be available in a suit at law where the facts make such cognizance necessary to the ends of justice.
“A primal rule is that forfeitures are not favored either in equity or at law; indeed, it is declared as a universal rule that courts of equity will not lend their aid to enforce a forfeiture. 'Following as a corollary from this, provisions for forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced.”
See also City of Toledo v. The Toledo Railways & Light Co., 2 C. C., N. S., 97, and Eichenlaub v. Neil, 10 C. C., 427.
The term “use” employed in the covenant in the lease ought not to be enforced in a technical or restricted sense, but may be reasonably enlarged to prevent a forfeiture. It is reasonable to hold that the word “use” may include an incidental use.
*246 The word “only” does not necessarily restrict or limit the meaning of the word “use.” It applies whenever the use enlarged by including reasonable incidental uses is transcended and other independent and distinct uses are resorted to. Many businesses devote a part of their space to incidental work. Rest rooms and welfare departments for customers and employes are regarded •as incidental, and such incidental uses would certainly not work a forfeiture of a lease unless it should be expressly and clearly so denominated in the lease.
It is a matter of common knowledge that small shopkeepers sometimes choose to live in connection with the business. This enables them to devote longer hours and give closer attention to business. It also gives them the benefit of the assistance of members of the family in cases of emergency.
The rear rooms involved in this lease were in a crude sense adapted to use as living quarters.
Dietrich testifies that it was agreed at the time of the oral lease that the rear rooms were to be so used, and that he did so use them during the term of said verbal lease, and was so using them at the time the written lease was executed. And he also testifies that he so notified Fisher & Allen, who acted for the owner when the leases were made. This testimony is' undisputed. No objections were made to such use until November, 1919, about eight months after the execution of the lease. The evidence is sufficient to prove that both Dietrich and the company regarded the use of the rear rooms for living purposes as consistent with the lease. It is clear that Dietrich so under *247 stood it, and the agents of the owner, according to the undisputed evidence, must have known that Dietrich so understood it.
We quote from Porter, J., in Hoffman & Place v. Aetna Fire Ins. Co., 32 N. Y., 405, at page 413, quotéd with approval by Judge Spear in the Webster case, supra:
"It is a rule of law, as well as of ethics, that when the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee. * * *
"It is also a familiar rule of law, that if it be left in doubt, in view of the general tenor of the instrument and the relations of the contracting parties, whether given words were used in an enlarged, or a restricted sense, other things being equal, that construction should be adopted which is most beneñcial to the promisee.”
The undisputed evidence in this case justifies us in the conclusion that it would be no injustice to the owner- to construe this covenant as the parties evidently intended, and that it would be harsh and oppressive to enforce a forfeiture against the tenant under the circumstances.
It is argued that an estoppel should not be applied against an enforcement of a continuing forfeiture by the failure of the party benefited to object in the initial stages.
We rely upon a liberal construction of the word “use” rather than estoppel, but if estoppel is to be employed we think the principle urged by counsel does not apply.
*248 The estoppel in the present case sinks deeper. It is embedded in the consideration of the lease. It is presumed to have formed an inducement for the lease, and is represented in the rental agreed upon. The agents of the owner having recognized the incidental use at the time of the execution of the lease we think it would be inequitable and.unjust now to restrict the use or enforce the forfeiture complained of.
It would, therefore, follow from the undisputed evidence that the court erred in instructing a verdict in favor of the plaintiff below.
The judgment will, therefore, be reversed and final judgment allowed in favor of the plaintiff in error.

Judgment reversed, and judgment for plaintiff in error.

Ferneding and Kunkle, JJ., concur.
Judges of the Second Appellate District, sitting in place of Judges Dunlap, Vickery and Wash-burn of the Eighth Appellate District.