Central Drug Store *v.* Adams *et al.*

(*Knoxville*, September Term, 1946.)

Opinion filed May 3, 1947.

KILGO & ARMSTRONG, of Greeneville, for complainant.

SUSONG, PARVIN, FRAKER & ROGAN, of Greeneville, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

This suit involves the construction of a lease contract. The owners of the property known as the "the Williams Building" in the city of Greeneville leased it to three separate occupants or tenants. The complainant's drug store occupies the room on the south side of the building and the two floors above it. The storeroom on the north side is occupied by a grocery store. The center room was leased to William V. Lindsey who used it in the business of a retail furniture store. The said Lindsey subleased the store to his codefendant, Angelo Adams, who intends to use the premises in the operation of a restaurant where he will serve food and sell cigarettes and other tobacco products. He does not intend to sell beer. The lease contract contains the following provisions:

"The lessee shall have the right to sublease, all or any part of the leased premises provided, however, said premises shall not be subleased for use as a pool parlor, beer parlor, or other business which would be undesirable and

544

objectionable to the tenants in other parts of the building. . . .

"The lessee covenants with the lessors to use the leased premises in such a way as not to constitute a nuisance, or interfere with the tenants in adjoining premises, and that upon the expiration of the lease, . . ." etc.

The complainant filed its original bill in the Chancery Court for a declaratory judgment as to the rights of lessees and sublessees under the contract and to enjoin the defendant Adams from carrying on the restaurant business in the room adjoining complainant. The bill alleges that complainant has invested large sums of money in the operation of its business for the sale of food, including soft drinks, coffee, sandwiches, and candy, and that at least 25 per cent of its gross income is derived from the sale of food items and tobacco. In the main, the business, of course, is that of selling drugs and is licensed for that purpose. It is further alleged that any restaurant which is operated in the center storeroom is undesirable and objectionable to complainant because "offensive odors would come from the said restaurant" and that said restaurant "will be in competition with Your Complainant."

The defendant moved to dissolve the injunction and filed a demurrer averring (1) that the bill sets forth no cause of action; (2) that the facts averred do not warrant the issuance of an injunction; and (3) the complainant is not entitled to a declaratory judgment.

The Chancellor overruled both the motion and the demurrer and allowed a discretionary appeal. The three assignments of error question the correctness of the Chancellor's decree as aforesaid.

The sum and substance of complainant's contention is that the doctrine of *ejusdem generis* does not apply in construing the contract in question, and that "under the

quoted provisions of the lease to the defendant Lindsey the complainant and not the courts has the sole discretion to determine what is objectionable and undesirable.'' It is contended also that the doctrine of *ejusdem generis* is a rule of interpretation and that it should not be applied because the lease contract is unambiguous. The argument is made that the contract is clear as to the intention of the parties and that since it confers upon complainant the right to decide what is ''objectionable and undesirable'', the right will not be denied under the guise of judicial interpretation.

We cannot agree with this insistence. The restrictive use of the storehouse according to the language of the lease is in general terms and, while ''other tenants'' were given the right to make objections to the lease of adjoining stores for certain purposes, we think the contract did not contemplate or ''intend to leave the future occupancy of these premises exclusively to the whim of other tenants.'' This is the response of defendants to complainant's argument and we think it is sound.

Only two questions are presented under the assignments of error: (1) Is a restaurant ''undesirable and objectionable'' as contemplated by the terms of the lease? (2) Had the complainant the right to injunctive relief on the ground that a restaurant is ''objectionable and undesirable'' because it is a competitive business?

In giving consideration to the terms of the contract we decline to adopt the construction of complainant that tenants of the building are the sole arbiters as to what business is undesirable and objectionable, because it is repugnant to the time-honored rule that the law favors the free and untrammeled use of property, and that restrictions in conveyances on the fee are always regarded unfavorably. Moreover, it has been repeatedly held that

restrictions in derogation of the fee will not be extended or enlarged by implication. *Bolin* v. *Tyrol Investment Co.*, 273 Mo. 257, 262, 200 S. W. 1059, L. R. A. 1918C, 869; *Presby* v. *Benjamin* 169 N. Y. 377, 62 N. E. 430; 57 L. R. A. 317; *Chamberlain* v. *Brown*, 141 Iowa 540, 120 N W. 334; Thompson on Real Property, Vol. 7, sec. 3569.

The contract in the instant case, after providing that "said premises shall not be subleased for use as a pool parlor, beer parlor, or other business which would be undesirable," etc., is followed by a covenant that the lessee will not use the premises "in such a way as to constitute a nuisance". When these two provisions are considered together, the intention of the contracting parties is clear that the storehouse would not be used for conducting a business that is objectionable in a legal sense. In other words, such businesses are excluded as might be characterized as a nuisance *per se*, or a nuisance by reason of the manner in which it is conducted. *Mathews Real Estate Co.* v. *National P. & E. Co.*, 330 Mo. 190, 48 S. W. (2d) 911, 81 A. L. R. 1039.

In *Theunissen* v. *Huyler's, Inc.*, 58 App. D. C. 106, 25 F. (2d) 530, 61 A. L. R. 706, the Court had under consideration the identical question made in the present controversy. The contract provided that the premises would not be used "for any unlawful purpose, and that it [lessee] will not use the same for any purpose which might be deemed objectionable." The Court said:

"It is the contention of plaintiffs that the proper interpretation of the provision in the lease relating to subletting 'would make it read, "Nor sublet the same for any purpose which might be deemed objectionable" to the lessors.' In other words, plaintiffs contend that their consent is a prerequisite to a subletting by the defendant, and that is exclusively for them to say wehther or not the pur-

pose for which the premises are to be used is objectionable. . . .

"In our view this clause means that defendant might sublet the premises without the consent of the plaintiffs, providing the purpose for which the premises were to be used might not be deemed objectionable in a legal sense. By this we do not mean the use must be an unlawful one, but rather such a use as in the circumstances is 'deserving of disapproval, offensive, or reprehensible'."

█ It cannot be doubted that "pool parlors and beer parlors" are expressly excluded under the contract, but restaurants are not. Under the language "or other businesses which would be undesirable and objectionable to tenants", the words "or other businesses" must in all reason embrace a business that is of a similar type to that of " pool parlors or beer parlors", or "such as from its nature or extent or the manner of con-- ducting it would amount to a nuisance." *Mathews Real Estate Co.* v. *National P. & E. Co., supra* [330 Mo. 190, 48 S W. (2d) 914]. Moreover, it must be borne in mind that "doubts as to the meaning and extent of a lease restriction must be resolved against the restriction contended for and in favor of natural rights. *Dietrich* v. *Ezra Smith Co.,* 12 Ohio App. 243." 148 A. L. R. 588.

█ In 35 C. J., Landlord & Tenant, sec. 478, p. 1181, it is said: "The meaning of general words in a lease is restricted by more specific and particular descriptions of the subject matter to which they apply. Thus, where no intention to the contrary appears, general words used after specific terms are to be confined to things *ejusdem generis* with the things previously specified."

To the same effect see *Swift & Co.* v. *Columbia R. G. & E. Co.,* 4 Cir., 17 F. (2d) 46, 51 A. L. R. 983.

548

■ The *ejusdem generis* rule is interestingly discussed in our own case of *Morgan Bros.* v. *Coal & Iron Co.*, 134 Tenn. 228, 183 S. W. 1019, Ann. Cas. 1917E, 42, in which reference is made to the following quotation from English Ruling Cases, Vol. 14, p. 717: " 'Where, after an enumeration of particulars, there is a sweeping clause comprising all other things under a general description, the scope of such clause is restricted to things within the description of the same kind with the particulars enumerated.' "

■ In the case of *Emory* v. *Sweat*, 9 Tenn. App. 167, 176, which was a suit to enforce certain building restrictions, reference is made to the following authority in support of the Court's opinion:

" 'Restrictive covenants are in derogation of the right of unrestricted use of property, and are to be strictly construed against the party seeking to enforce them. They will not be enforced by implication, and will include anything not plainly prohibited. *Zinn* v. *Sidler*, 268 Mo. 680, 689, 187 S. W. 1172, L. R. A. 1917A, 455; *Hartman* v. *Wells*, 257 Ill. 167, 100 N. E. 500, Ann. Cas. 1914A, 901; *Morrison* v. *Hess*, Mo. Sup., 231 S. W. 997, 18 A. L. R. 433; *Elterich* v. *Leicht et seq.*, 130 Va. 224, 107 S. E. 735, 18 A. L. R. 441.' "

" 'The burden rests upon the person relying on such covenants to bring himself within its terms. These principles apply with especial force to persons who are not parties to the instrument containing the restriction. *Stevenson* v. *Spivey*, 132 Va. 115, 110 S. E. 367, 21 A. L. R. 1278.' "

■ We are not at all impressed with the truth of the averment in the bill that "Offensive odors would come from said restaurant," and that "large crowds would congregate around said restaurant." This is not only a

conclusion of the pleader, but we are asked to anticipate that these things will happen. There is no authority, certainly none has been brought to our attention, holding that a restaurant is a nuisance *per se*. Where a business is not a nuisance in and of itself, a court of equity will not anticipate that it will be operated injuriously to others and award an injunction to abate it.

██ ██ From a careful reading of the bill, we think the real purpose of complainant's suit is to prevent the defendant Adams from entering business as a competitor. There is not a suggestion in the contract prohibiting the subleasing of the store to one who might become a competitor of the complainant. In the absence of such a provision ,we will not undertake to make a new contract for the parties under the guise of unwarranted interpretation.

The assignments of error are sustained and the bill is dismissed.

All Justices concur.