IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 16, 2005 Session

## DEBRA ANN WILLIAMS v. GEORGE JAY WILLIAMS, IV

**Appeal from the Circuit Court for Hamilton County**
**No. 98D1036     Samuel H. Payne, Judge**

---

**No. E2004-00423-COA-R3-CV - FILED MAY 24, 2005**

---

Debra Ann Williams ("Mother") and George Jay Williams, IV ("Father") were divorced in 1998. Mother was designated the custodial parent of the parties' two minor children. In 2003, Father filed a Petition for Modification and Contempt seeking, in part, a change in custody or visitation, and relief from the requirement that Father carry life insurance or, in the alternative, that Mother also be required to maintain life insurance. Mother filed a counter claim requesting, in part, increased child support and the right to claim the tax exemption for both children. After a trial, the Trial Court entered an order holding, *inter alia*, "that there has been no change in circumstances which would justify the modification of the final judgment" as requested by Father and dismissing Father's petition for modification. The Trial Court, however, increased child support in accordance with the guidelines and held that for purposes of calculating child support under the guidelines, Father was not entitled to a reduction in his annual earnings for state income taxes he may pay. Father appeals raising issues regarding custody, visitation, life insurance, child support, and attorney's fees. We reverse as to the award to Mother of the tax exemption for one child, and affirm as to all other issues.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed, in part,
Reversed, in part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and SHARON G. LEE, J., joined.

James A. Meaney, III, Atlanta, Georgia, for the Appellant, George Jay Williams, IV.

Lisa Z. Bowman, Chattanooga, Tennessee, for the Appellee, Debra Ann Williams.

## OPINION

### Background

Mother and Father entered into a Marital Dissolution Agreement and a Permanent Parenting Plan, which were approved by the Trial Court and incorporated into their Final Decree of Divorce ("the Divorce Decree")[1]. The Divorce Decree designated Mother as the custodial parent of the parties' two minor children and set Father's child support obligation at $689.00 per month. The Divorce Decree also provided, in part, that Father would receive the tax exemption for both children and that Father would provide life insurance on his own life with benefits payable to the children.

In January of 2003, Father filed a Petition for Modification and Contempt ("Petition") claiming, in part, that Mother "has failed and refused to comply with the express terms and conditions of the [Final] Decree [of Divorce]" and that there "has been a substantial change in the status of the parties which materially affects the welfare and best interest of the children." In the Petition, Father sought, in part, an award of primary physical custody of the children or, in the alternative, increased visitation, and relief from the requirement that Father maintain life insurance, or in the alternative, an order that Mother also be required to maintain insurance on her life. Mother answered and filed a counter-complaint seeking, in part, increased child support, the right to claim the tax exemption for both children, and her attorney's fees. The case was tried in August of 2003.

At trial, Father testified that he still is employed by the Atlanta Braves Baseball Organization, as he was at the time of the divorce. He is the head minor league trainer for the Atlanta Braves organization. Father testified he maintains a residence in Greenville, South Carolina; spends a portion of the year in Florida for spring training; and maintains an additional residence in Richmond, Virginia where he resides during the baseball season. Father testified that during the off season, from approximately September 1 to March 1, he works from his home.

Father testified that his salary has increased since the entry of the Divorce Decree. He testified that his salary for 1999 was $35,000 with an $800 monthly housing allowance for the months from April through August, which totals $4,000 in housing allowance for the year. Father testified that his current earnings, are $49,000 annually with a $4,000 a year housing allowance, which totals $53,000 for the year. Father testified that his housing allowance does not cover his additional living expenses in Virginia.

Father also testified that he now is required to pay state income tax in South Carolina and in Virginia due to the living arrangements dictated by his job. He testified South Carolina has an income tax of "about 7 percent, 6 percent." He testified Virginia has an income tax that is substantially similar to South Carolina's. Father introduced income and expense statements at trial

---

[1]In this Opinion, we shall refer to the Marital Dissolution Agreement, the Permanent Parenting Plan, and the Final Decree of Divorce collectively as "the Divorce Decree."

showing, in part, his gross wages and deductions for, among other things, federal income tax, South Carolina income tax, and Virginia income tax for a one year period.

Father testified regarding his reasons for filing the Petition. He testified about his concerns regarding the children's medical care and stated: "Most of the information I get about their medical care is either from the child themselves or me having to contact the doctor themselves…." He testified regarding communication between himself and Mother and stated: "My concerns are that because there is no communication, I'm either left to find out things from the children which is not how this should be done or through the Court." He stated: "There is no cooperation because one, [Mother] won't communicate, won't talk. Any time that there is a meaningful conversation that should take place about something, she hangs up, she doesn't want to talk anymore. All of a sudden, I don't have time for you because you're a bad person." He admitted: "I think our communication between the both of us is difficult." Father also testified regarding his concerns about the children's education and stated: "We bought them books to read. The mother was buying them video games for them, but making them pay for books to read. To me, that was backwards."

Father testified regarding his visitation with the children and explained: "A round trip [from Mother's residence to Father's], you're looking at 500 miles, you know, in a weekend. It's 125 there - - no, excuse me. It is 250 miles from Greenville to here, and then 250 so it's 500 miles - - . . . round trip. 1,000 miles in a weekend." Father admitted he does not see the children at least 80 days a year "due to my schedule and part of it is due to the inability to just see them financially and with travel constraints during the year when I'm off work."

After the trial, the Trial Court entered its order on November 13, 2003, holding, *inter alia*, "that there has been no change in circumstances which would justify the modification of the final judgment . . .," that "child support should be increased commensurate with [Father's] earnings and in accordance with the child support guidelines and that [Father] is not entitled to a reduction in his annual earnings for additional State taxes that he may pay due to his employment." Among other things, the Trial Court ordered Father to pay child support in the amount of $971 per month, awarded Mother the tax deduction for one of the parties' children, and ordered that as additional child support Father shall pay Mother's attorney's fees in the amount of $500. The Trial Court refused to increase visitation, but, with the agreement of the parties, amended the Divorce Decree to revise the dates for visitation keeping in mind Father's need to transport the children a great distance to his home in another state for visitation. In its memorandum opinion issued from the bench, the Trial Court stated:

> The Court finds no basis to change custody at all. . . . I just found out y'all just like to fuss. I feel so sorry for your children. It's a wonder they don't need all kinds of counseling because I'm sure they can feel this tension every time you get together.
>
> The things that you're talking about...[are] the same things you had when you got divorced. You were traveling, the same thing. I wouldn't send the children where they're going to live in three different homes in Florida, Carolina, Richmond.

-3-

I wouldn't do that at all. In fact, I'm not even sure that would be in the best interest for the children at all.

The Trial Court also stated: "I'm not going to increase your [child] support simply because you don't see [the children] . . . 80 days a year. . . . You're doing pretty good considering - - you're doing more than most people I get that have to do as much traveling as you do."

Father filed a Motion for New Trial and a Motion to Alter or Amend, both of which the Trial Court denied. Father appeals to this Court.

## Discussion

Although not stated exactly as such, Father raises five issues on appeal: 1) whether the Trial Court erred in computing child support without giving Father a deduction for his state income taxes withheld in South Carolina and Virginia and for his life insurance premiums; 2) whether the Trial Court erred in refusing to modify custody or visitation; 3) whether the Trial Court erred in awarding to Mother the tax exemption for one of the parties' children; 4) whether the Trial Court erred in refusing either to eliminate the requirement that Father carry life insurance or to require Mother to maintain a similar policy; and, 5) whether the Trial Court erred in awarding attorney's fees to Mother. Mother requests an award of attorney's fees and costs on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). We review child support decisions for abuse of discretion. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244 (Tenn. Ct. App. 2000). However, a trial court's discretion is limited because such "discretion must be exercised within the strictures of the Child Support Guidelines." *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *see also Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996).

Our Supreme Court discussed the abuse of discretion standard in *Eldridge v. Eldridge*, stating:

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

Appellate courts ordinarily permit discretionary decisions to stand when reasonable judicial minds can differ concerning their soundness. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). A trial court's discretionary decision must take into account applicable law and be consistent with the facts before the court. *Id.* When reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." *Id.*

We first consider whether the Trial Court erred in computing child support without giving Father credit for state income taxes withheld in his state of residence and for his life insurance premiums. In pertinent part, Tenn. Code Ann. § 36-5-101 provides:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

Tenn. Code Ann. § 36-5-101 (a)(1)(A) (Supp. 2004). Neither party contests on appeal the Trial Court's holding that a significant variance exists justifying an increase in child support. Rather, Father argues that in calculating his net income for purposes of determining if a significant variance exists, the Trial Court should have allowed him a deduction for state income taxes.

In pertinent part, the child support guidelines provide:

> Net income is calculated by deducting from gross income of the obligor FICA (6.2% Social Security + 1.45% Medicare for regular wage earners and 12.4% Social Security + 2.9% Medicare for self-employed, as of 1991, or any amount subsequently set by Federal law as FICA tax), the amount of withholding tax deducted for a single wage earner claiming one withholding allowance (copies of appropriate table will be provided to courts with the guidelines), and the amount of any adjustment(s) or credit(s) to the obligor's net income pursuant to subparagraphs (c), (e), (f) and (g) of this paragraph.

Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(4)(b)(1) (2003).

Under the guidelines, an obligor, such as Father, is entitled to deduct FICA tax and withholding tax. The guidelines do not specifically address whether an obligor may deduct state withholding tax. However, as to the withholding tax deduction, the guidelines do state that "copies

of appropriate *table* will be provided to courts with the guidelines . . . ."[2] *Id.* (emphasis added). As the guidelines state that the appropriate *table* for withholding tax will be provided, rather than appropriate *tables*, we conclude that under the guidelines only federal withholding tax, not state, may be deducted. If it were otherwise, the guidelines would state that appropriate *tables* would be provided and courts would need to have copies of tables for each and every state that has a state income tax. Further, we take judicial notice that each of the fifty states has its own state taxation system. For example, some states have a state income tax whereas other states, such as Tennessee, do not have a state income tax. Because Tennessee raises its state revenue without resorting to a state income tax, we think it is relevant that the guidelines do not provide for any deduction or credit for any Tennessee taxes paid by an obligor. An obligor is not given a credit or deduction for Tennessee taxes, which are taxes other than an income tax, paid by the obligor. We do not believe the intent of the guidelines is to allow an obligor who pays state taxes to a state other than Tennessee to get a deduction while those obligors who pay taxes to Tennessee receive no such deduction.

Even if we are incorrect in our holding that state income taxes are not allowed as a deduction under the guidelines, Father provided no proof of what effect his payment of state income tax has upon his federal withholding tax, such as perhaps lowering his federal taxes. For all these reasons, we affirm the Trial Court's holding that Father is not entitled to a reduction in net income for state taxes he may pay.

Father also argues that he should receive a credit towards the amount of child support owed under the guidelines for the amount he pays to maintain insurance on his life. Given the facts of this case, we find no error by the Trial Court in not amending the Divorce Decree because, as discussed later in this Opinion, we find no material change in circumstances relevant to the life insurance. We affirm the Trial Court's decision refusing to award Father a credit for his insurance premiums.

We next consider whether the Trial Court erred in refusing to modify custody or visitation. In *Kendrick v. Shoemake*, our Supreme Court held that "a trial court may modify an award of child custody when both a material change of circumstances has occurred and a change of custody is in the child's best interests." *Kendrick v. Shoemake*, 90 S.W.3d 566, 568 (Tenn. 2002). The *Kendrick* Court stated:

> As explained in *Blair*, the "threshold issue" is whether a material change in circumstances has occurred after the initial custody determination. *Id.* at 150. While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably

---

[2]We utilize the guidelines in effect at the time of trial in this matter. We note that these guidelines have since been amended.

anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way." *Id*. (citations omitted).

*Id*. at 570 (quoting *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002)).

When making a determination regarding the best interest of the child for purposes of modifying custody:

The court shall consider all relevant factors including the following where applicable:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in §39-15-401 or § 39-15-402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and

-7-

all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a) (2001).

Father argues that Mother refuses to "cooperate with the father on parenting issues, to abide by either the letter or the spirit of the decree, or to provide a proper emotional, educational or physical environment for the children." Father claims Mother refuses to cooperate in transporting the children for visitation, does not provide Father with information regarding the children's health care, does not comply with recommendations of the children's pediatrician, is not aware of what her own mother does as a volunteer at the children's school, does not provide a copy of her tax return each year as required by court order, and ignored Father's written request for mediation.

A court never reaches the best interest analysis unless there first is shown to be a material change of circumstances. The Trial Court specifically found that "[t]he things that you're talking about...[are] the same things you had when you got divorced." Our careful review of the record reveals that the evidence does not preponderate against the Trial Court's finding that Father has failed to make the threshold showing of a material change in circumstances. As Father has failed to make the threshold showing, we do not reach the best interest analysis. We affirm the Trial Court on this issue.

We next consider whether the Trial Court erred in awarding to Mother the tax exemption for one of the parties' children. As this Court stated in *Boutin v. Boutin*:

Marital dissolution agreements are essentially contractual in the sense that they are the product of the parties' negotiation and agreement. Except for legal obligations that remain under the court's control, these agreements should be construed and enforced using the customary principles of contract law.

*Boutin v. Boutin*, No. 01A01-9601-CH-00014, 1996 Tenn. App. LEXIS 770, at *6 (Tenn. Ct. App. Dec. 4, 1996) (citations omitted), *no appl. perm. appeal filed*.

The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). The parties' intent is presumed to be that

specifically expressed in the body of the contract.  "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy."  *Id*. at 890 (quoting 17 Am. Jur. 2d, *Contracts*, § 245).

Father and Mother contractually agreed that Father would receive the tax exemption for both children.  This provision is clear and unambiguous and we must give effect to the parties' intent.  It is not the role of this Court "to make a different contract than that executed by the parties." *Posner v. Posner*, No. 02A01-9710-CV-00249, 1997 Tenn. App. LEXIS 930, at *6 (Tenn. Ct. App. Dec. 30, 1997), *no appl. perm. appeal filed.  See also, e.g., Central Drug Store v. Adams*, 201 S.W.2d 682 (Tenn. 1947).  "In the absence of fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought to be harsh or unjust." *Tenpenny v. Tenpenny*, No. 01-A-01-9406-CV-00296, 1995 Tenn. App. LEXIS 105, at *15 (Tenn. Ct. App. Feb. 22, 1995), *appl. perm. appeal denied July 3, 1995*.

However, courts certainly maintain jurisdiction to modify custody under the appropriate circumstances.  If, in fact, custody was changed, it might well be that a change of the allocation of the tax exemption for a child would be subject to modification as a part of the change of custody.  Here, however, there is no change of custody.

In addition, we note that even if we are in error and the award of the tax exemption generally is modifiable even without a change of custody, Mother has proven no material change in circumstances.  The evidence shows that Mother, who was not working full-time at the time the Divorce Decree was entered, is now employed full-time.  However, Mother cannot reasonably claim that her obtaining full-time employment was an unanticipated change given that the parties were obtaining a divorce.  As there was no material change proven, modification of the tax exemption allocation, even if allowable, would not be proper.  For all these reasons, we reverse the Trial Court's award to Mother of the tax exemption for one of the parties' children.

We next consider whether the Trial Court erred in refusing either to eliminate the requirement that Father carry life insurance or to require Mother to maintain a similar policy.  Father cites to Tenn. Code Ann.§ 36-5-101(g) for the proposition that the court may direct either or both parties to maintain life insurance.  Tenn. Code Ann. § 36-5-101(g) (Supp. 2004).  While Father is correct that Tenn. Code Ann. § 36-5-101(g) does provide as stated, the parties in this case contractually agreed that Father and not Mother would maintain life insurance.  Thus, Tenn. Code Ann. § 36-5-101(g) is not applicable to the issue before us.

Father and Mother contractually agreed in the Divorce Decree that Father would provide life insurance on his own life and would list the parties' two minor children as the primary beneficiaries under the life insurance policy or policies.  In addition, the parties contractually agreed that "Father shall maintain said life insurance on the parties' minor children until they reach the age of majority."  As discussed above, we must give effect to the parties' intent and construe the contract as written.

In addition, our Supreme Court has instructed:

> Tennessee courts have utilized equitable grounds to protect persons legally mandated to be listed as beneficiaries of a life insurance policy. As such, it is clear under Tennessee law that an enforceable agreement, such as a marital dissolution agreement, which mandates that an individual be listed as a beneficiary of a life insurance policy existing at the time of the agreement vests in that individual an equitable interest in the designated policy.

> * * *

> [W]e conclude that no significant difference exists between circumstances in which an identifiable life insurance policy existed at the time of the divorce, . . . and [a situation where the policy was purchased post-divorce]."

*Holt v. Holt*, 995 S.W.2d 68, 72 & 77 (Tenn. 1999) (citation omitted).

Father and Mother contractually agreed that Father would provide life insurance on his life, and we will not rewrite this contract. Even if the agreement to provide life insurance is categorized as modifiable child support and not a contractual agreement, Father provided no evidence of a material change in circumstances. Father claims there is a material change in circumstances because he no longer has lymphoma cancer. However, this is a change that was anticipated by the parties and provided for in the Divorce Decree by the provision that Father would "maintain said life insurance on the parties' minor children until they reach the age of majority." Clearly, the parties anticipated that Father would have to remain alive in order for him to be able to continue to maintain life insurance until the minor children, who were both under the age of five at the time the Divorce Decree was entered, reached the age of majority. Thus, the fact that Father survived lymphoma cancer is not a material change in circumstances that would justify a change in the requirement that Father maintain life insurance.

Father also cites to *Dix v. Carson* in support of his contention that the Trial Court erred by not addressing whether life insurance is appropriate in this case. *Dix v. Carson*, No. 02A01-9704-CV-00093, 1998 Tenn. App. LEXIS 840, at *42 (Tenn. Ct. App. Dec. 17, 1998), *appl. perm. appeal denied June 21, 1999*. However, it was unnecessary for the Trial Court to address whether life insurance was appropriate in this case as the parties originally agreed that Father would maintain insurance on his life. There is no provision in the contract that Mother provide insurance on her life, and we find no abuse of discretion in the Trial Court's refusal to order Mother to provide such insurance.

Finally, we consider whether the Trial Court erred in awarding attorney's fees to Mother. In pertinent part, Tenn. Code Ann. § 36-5-103 provides:

The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103 (c) (Supp. 2004).

In this case, Mother is the spouse to whom custody of the children was awarded and, as the trial in this case concerned, in part, adjudication regarding custody, Mother was entitled to recover such reasonable attorney fees as were fixed and allowed by the Trial Court in its discretion. Father failed to prove a material change in circumstances to justify a change in custody. The Trial Court awarded Mother $500 in attorney's fees. We believe, at a minimum, that reasonable minds could disagree as to the propriety of the decision made by the Trial Court to award attorney's fees to Mother, the very essence of a discretionary decision. We believe this to be especially so given that although Mother prevailed regarding the custody issue, Father argues that Mother "refused to comply with the terms of the parenting plan requiring mediation . . ." and that if she had complied "no attorney's fees would have been accrued or awarded." We note, however, that the parties did attempt to mediate prior to the trial of this matter. The mediation was unsuccessful. Given this, we will not substitute our judgment for that of the Trial Court, and we find no abuse of discretion in the award of attorney's fees.

Mother requests an award of attorney's fees and costs on appeal. "This Court has recognized that '[the] allowance of attorney's fees for [an appeal] is for the benefit of the child, and the custodial spouse should not have to bear the expense incurred on the child's behalf.'" *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001) (quoting *Ragan v. Ragan*, 858 S.W.2d 332, 334 (Tenn. Ct. App. 1993)). Accordingly, we grant Mother her reasonable attorney's fees incurred on appeal. On remand, the Trial Court shall determine the amount of Mother's reasonable attorney's fees incurred in this appeal.

## Conclusion

The judgment of the Trial Court is reversed as to the award to Mother of the tax exemption for one child and affirmed as to all other issues, and this cause is remanded to the Trial Court for a determination of reasonable attorney's fees incurred by Mother in this appeal and for

collection of the costs below.  Exercising our discretion, the costs on appeal are assessed against the Appellant, George Jay Williams, IV, and his surety.


_____

D. MICHAEL SWINEY, JUDGE