# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 9, 2018 Session

## ROBERT A. HANKS, ET AL. v. FIRST AMERICAN TITLE INSURANCE CO.

**Appeal from the Chancery Court for Sumner County**
**No. 2015-CV-42    Louis W. Oliver, III, Chancellor**

_____

### No. M2017-00560-COA-R3-CV

_____

Robert A. Hanks and Lee E. Hanks ("Plaintiffs") sued First American Title Insurance Co. ("First American") for breach of contract with regard to an owner's title insurance policy ("Title Policy"). First American filed a motion for summary judgment. After a hearing, the Chancery Court for Sumner County ("the Trial Court") granted summary judgment to First American after finding and holding, *inter alia*, that the Title Policy excluded any claim pursuant to either federal bankruptcy code or Tennessee law for an alleged fraudulent conveyance, fraudulent transfer, or preferential transfer. Plaintiffs appeal the grant of summary judgment to this Court. We find and hold that First American made a properly supported motion for summary judgment demonstrating that Plaintiffs' evidence is insufficient to establish an essential element of their claim and that Plaintiffs failed to demonstrate that there are genuine disputed issues of material fact with regard to the claims for fraudulent conveyance or fraudulent transfer. We further find and hold that the claim for post-petition transfer is not excluded from coverage pursuant to exclusion 4 of the Title Policy, and, therefore, summary judgment on the post-petition claim was improper. We, therefore, affirm the grant of summary judgment, in part, and reverse it, in part, and remand this case to the Trial Court for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed, in part; Reversed, in part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

E. Covington Johnston, Jr., Franklin, Tennessee, for the appellants, Robert A. Hanks and Lee E. Hanks.

Reba Brown and Brad W. Craig, Nashville, Tennessee, for the appellee, First American Title Insurance Co.

## OPINION

### Background

Plaintiffs own real property located on Valley Brook Drive in Sumner County, Tennessee ("the Property"), which they purchased by Warranty Deed from Charles R. Dennie and Joanne R. Dennie ("the Dennies") on October 11, 2013. Charles Dennie is the son of Plaintiff Lee E. Hanks and the step-son of Plaintiff Robert Hanks. The Dennies had filed a Chapter 7 bankruptcy petition on October 10, 2013, the day before the transfer of the Property. The bankruptcy petition listed the Property as one of the Dennies' assets. At the closing on the Property, the Dennies executed an affidavit as to liens and encumbrances stating that no proceedings in bankruptcy or receivership had been instituted against them.

In connection with the closing on the Property, Plaintiffs executed a note and deed of trust in the amount of $153,000 payable to CMG Mortgage, Inc. Plaintiffs also purchased the Title Policy from First American. In pertinent part, the Title Policy provides:

EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

* * *

3. Defects, liens, encumbrances, adverse claims, or other matters

(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an insured under this policy.
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

2

(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

(a) a fraudulent conveyance or fraudulent transfer; or
(b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

The bankruptcy trustee ("Bankruptcy Trustee") filed a complaint on December 9, 2013 in the United States Bankruptcy Court for the Middle District of Tennessee seeking to void the transfer of the Property alleging that the transfer was a fraudulent transfer under state law, a fraudulent transfer pursuant to the bankruptcy code, and an invalid post-petition transfer under federal law. In pertinent part, the complaint filed by the Bankruptcy Trustee specifically alleged:

> 22. The Trustee, on behalf of the bankruptcy estate of the [Dennies] and on behalf the [sic] [Dennies'] unsecured creditors, is entitled to avoid, and recover back, all such fraudulent transfers, pursuant to, among other things, Tennessee's law against fraudulent conveyances, T.C.A. § 66-3-101, *et seq.*, and Tennessee's codification of the Uniform Fraudulent Transfers Act, T.C.A. § 66-3-301, *et seq.*, which include strong-arm provisions afforded to the Trustee pursuant to 11 U.S.C. § 544(b).

> \* \* \*

> 27. The Trustee is entitled to avoid, and recover back, on behalf of the [Dennies'] bankruptcy estate, all such fraudulent transfers, pursuant to, among other things, the United States Bankruptcy Code's Section prohibiting fraudulent transfers, 11 U.S.C. § 548.

> \* \* \*

> 33. Trustee is entitled to avoid, and recover back, all such invalid post-petition transfers pursuant to 11 U.S.C. § 549. Pursuant to 11 U.S.C. §§ 550 and 551, [the Trustee] is entitled to recover back the avoided property or the value thereof, and such avoidances are recovered for the benefit of the estate.

3

Plaintiffs notified First American of the claim. First American investigated and determined that Plaintiffs were related to the Dennies, that Plaintiffs agreed to purchase the Property for $170,000, that CMG Mortgage Inc., in anticipation of closing, had obtained an appraisal valuing the Property at $260,000, that at closing two mortgages totaling approximately $132,500 were paid off, that the Dennies had received approximately $29,515 in cash at closing, that the Dennies had filed for bankruptcy the day before closing, and that the Dennies had executed the affidavit as to liens and encumbrances at closing.

First American refused Plaintiffs' claim. Plaintiffs paid $65,000 to the Bankruptcy Trustee to clear title to the Property and extinguish claims and liens, and an agreed order of voluntary dismissal was entered in the bankruptcy case. Plaintiffs sued First American for breach of contract.

First American filed a motion for summary judgment alleging that Plaintiffs could not prove breach of contract as their claim was excluded under the Title Policy. Plaintiffs opposed the motion for summary judgment and filed the affidavits of Plaintiffs. In their affidavits, Plaintiffs each asserted that they paid $170,000 for the Property, that they had no knowledge of the bankruptcy at the time of the closing on the Property, that prior to the closing they had advanced approximately $35,000 to the Dennies to improve the Property, that the appraised value of the Property on March 1, 2013 was $148,500, and that they had obtained a mortgage on the Property in the approximate amount of $150,000. Plaintiffs' affidavits assert that a copy of the March 2013 appraisal is attached to the affidavits, but the appraisal is not included in the record on appeal. Plaintiffs also filed the affidavits of the Dennies in which the Dennies asserted similar facts to those asserted in Plaintiffs' affidavits and also asserted that the value of the Property was listed as $163,000 in the bankruptcy petition and that they had not informed Plaintiffs about the bankruptcy prior to the closing on the Property.

After a hearing, the Trial Court granted First American summary judgment after finding and holding, *inter alia*, that pursuant to exclusion number 4 the clear language of the Title Policy excludes 'any claim' brought under the federal bankruptcy code or Tennessee state law alleging a fraudulent conveyance, a fraudulent transfer, or a preferential transfer, and that this is so despite the fact that Plaintiffs dispute that the transfer was fraudulent and assert that the claim was settled without admission of liability.

Plaintiffs filed a motion to alter or amend alleging that the Trial Court erred because the transfer was not on its face a fraudulent conveyance and also alleging that the third claim in the complaint filed by the Bankruptcy Trustee was for an invalid post-petition transfer, which Plaintiffs allege is not excluded from coverage under the Title

4

Policy. First American responded to the motion to alter or amend asserting that Plaintiffs' motion to alter or amend was merely another attempt to argue their same point and that the third claim in the complaint filed by the Bankruptcy Trustee is excluded under exclusion number 3 in the Title Policy. The Trial Court denied the motion to alter or amend after finding that the third claim also was excluded under exclusion number 4 of the Title Policy. Plaintiffs appeal to this Court.

## **Discussion**

Plaintiffs raise one issue on appeal: whether the Trial Court erred in granting First American's motion for summary judgment. First American raises an additional issue regarding whether the Trial Court erred in finding that exclusions 3(a) and 3(e) did not apply to Plaintiffs' claims.[1]

As our Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

* * *

---

[1] In its brief on appeal, First American argues that the Trial Court ruled upon this issue and cites to the transcript of the hearing on the motion to alter or amend in support of this assertion. As our Supreme Court has stated: "the court speaks through its order, not through the transcript." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001). In its order granting summary judgment, the Trial Court made no determination as to whether exclusions 3(a) or 3(e) of the Title Policy applied, but rather based its decision to grant summary judgment solely upon exclusion 4. In its order denying Plaintiffs' motion to alter or amend, the Trial Court found that the Bankruptcy Trustee's claim for relief for an invalid post-petition transfer also was excluded under exclusion 4 of the Title Policy and did not address exclusions 3(a) or 3 (e). As the Trial Court did not address the issue of whether exclusions 3(a) or 3(e) applied, the issue is not properly before this Court.

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

6

In addressing the issue raised, we will consider first the claims made by the Bankruptcy Trustee of fraudulent transfer pursuant to federal bankruptcy and Tennessee state law. Then we will discuss the claim made by the Bankruptcy Trustee with regard to post-petition tranfer.

In their brief on appeal, Plaintiffs argue that exclusion number 4 of the Title Policy is not applicable because the Bankruptcy Trustee would not be able to prove that the transfer of the Property to Plaintiffs was a fraudulent conveyance or a preferential transfer. Plaintiffs have missed the point.

The Trial Court construed the plain and unambiguous language contained in exclusion 4 of the Title Policy and found and held, *inter alia*:

> The Exclusions From Coverage in the instant Owners Policy clearly exclude (in paragraph numbered 4.) coverage for "ANY CLAIM" made and does not separate valid or invalid, disputed or undisputed, claim but "ANY CLAIM". The language is unambigusous and clear that the Defendant First American Title Insurance Company would not have to defend a claim brought under the Federal Bankruptcy Code or Tennessee State law which alleged a fraudulent conveyance, a fraudulent transfer or a preferential transfer.

We interpret contracts of insurance using the same principles of construction as are used for interpreting any other contracts. *Swanson v. Mid-South Title Ins. Corp.*, 692 S.W.2d 415, 419 (Tenn. Ct. App. 1985). As this Court explained in *Quebecor Printing Corp. v. L & B Mfg. Co.*:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889–90 (Tenn. 2002)(citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998)); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement

should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am.Jur.2d, Contracts, § 245).

This Court's initial task in construing the [contract] at issue, as was the Trial Court's, is to determine whether the language of the contract is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Id.* A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. *Id.* (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. *Id.* Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id.*

\* \* \*

It is not the role of this Court "to make a different contract than that executed by the parties." *Posner v. Posner*, No. 02A01-9710-CV-00249, 1997 WL 796216, at \*2–3, 1997 Tenn. App. LEXIS 930, at \*6 (Tenn. Ct. App. Dec. 30, 1997), *no appl. perm. appeal filed. See also, e.g., Central Drug Store v. Adams*, 184 Tenn. 541, 201 S.W.2d 682 (1947). "In the absence of fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought to be harsh or unjust." *Tenpenny v. Tenpenny*, No. 01-A-01-9406-CV-00296, 1995 WL 70571, at \*6, 1995 Tenn. App. LEXIS 105, at \*15 (Tenn. Ct. App. Feb. 22, 1995), *appl. perm. appeal denied July 3, 1995*.

*Quebecor Printing Corp. v. L & B Mfg. Co.*, 209 S.W.3d 565, 578–81 (Tenn. Ct. App. 2006). This Court further has noted:

"Like other policies of insurance, title policies are liberally construed against the insurer and in favor of the insured." *Walker Rogge, Inc. v. Chelsea Title & Guaranty Co.*, 116 N.J. 517, 529, 562 A.2d 208 (1989). "Notwithstanding that principle of construction, courts should not write for the insured a better policy of insurance than the one purchased." *Id.* (citing *Last v. West Am. Ins. Co.*, 139 N.J.Super. 456, 460, 354 A.2d 364 (App.Div.1976)).

8

*The Peoples Bank v. Troutman*, No. E2014-01150-COA-R3-CV, 2015 WL 4511540, at *7 (Tenn. Ct. App. July 27, 2015), *Rule 11 appl. perm. appeal denied Nov. 24, 2015* (quoting *Wolf v. Clack*, No. E2009–01126–COA–R3–CV, 2009 WL 5173715 at *4–5 (Tenn. Ct. App. Dec. 30, 2009), *no appl. perm. appeal filed* (other internal citations omitted)).

Plaintiffs argue in their brief on appeal that the Bankruptcy Trustee would be unable to prove that the transfer of the Property was fraudulent or preferential. Whether this assertion is true or not, however, is immaterial to the issue now before us. The clear and unambiguous language of exclusion 4 of the Title Policy specifically excludes: "Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title . . . is . . . a fraudulent conveyance or fraudulent transfer; or . . . a preferential transfer . . . ." The Title Policy states "Any claim . . . ." The language could not be clearer. It does not state any 'valid claim,' any 'proven claim,' any 'undisputed claim,' or other similar qualifying language. Rather, exclusion 4 of the Title Policy clearly and unambiguously excludes "Any claim . . . .," and the Bankruptcy Trustee filed a claim alleging that the transfer of the Property was a fraudulent transfer or preferential transfer under both federal and Tennessee state law.

As the Bankruptcy Trustee made a claim of fraudulent or preferential transfer under federal law and Tennessee state law, and the Title Policy clearly and unambiguously provides an exception for any such claim, First American demonstrated that Plaintiffs would be unable to prove breach of contract. The burden then shifted to Plaintiffs to show that there are genuine disputed issues of material fact.

In their response to the motion for summary judgment and the accompanying affidavits, Plaintiffs showed that there are disputed issues of fact with regard to whether Plaintiffs had knowledge of the bankruptcy prior to the transfer of the Property and whether Plaintiffs paid full value for the Property. These disputed issues, however, do not address exclusion 4 of the Title Policy, which as discussed above, excludes: "Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title . . . is . . . a fraudulent conveyance or fraudulent transfer; or . . . a preferential transfer . . . ." Plaintiffs failed to show that there are any genuine disputed issues of material fact with regard to First American's motion based upon exclusion 4 of the Title Policy with regard to the claims for fraudulent transfer "by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws . . . ." As First American made a properly supported motion for summary judgment negating an essential element of Plaintiffs' claim and Plaintiffs failed to show any genuine disputed issues of material fact, we find no error in

the Trial Court's grant of summary judgment to First American with regard to the Bankruptcy Trustee's claims of fraudulent transfer.

With regard to the Bankruptcy Trustee's claim regarding a post-petition transfer, however, the analysis differs. Specifically, the Bankruptcy Trustee made a claim to recover back for an "invalid post-petition transfer[] pursuant to 11 U.S.C. § 549." The Bankruptcy Trustee did not allege a violation of Tennessee state law with regard to this specific claim. Plaintiffs argue that post-petition transfers are not fraudulent transfers pursuant to federal bankruptcy code, and therefore, that the claim for the post-petition transfer is not excluded by exclusion 4 in the Title Policy.

In pertinent part, the bankruptcy code provides that fraudulent transfers and obligations are ones "made or incurred on or within 2 years before the date of the filing of the petition . . . ." 11 U.S.C.A. § 548 (2005). Obviously, the post-petition transfer of the Property, however, did not occur on or before the date the Dennies filed the petition for bankruptcy. As such, the claim made by the Bankruptcy Trustee regarding the post-petition transfer is not a claim of a fraudulent conveyance or fraudulent transfer under the federal bankruptcy code and does not fall within the ambit of exclusion 4 of the Title Policy. As the claim for post-petition transfer was not excluded pursuant to exclusion 4 of the Title Policy, summary judgment on this basis with regard to this claim was improper.

As discussed above, there are genuine disputed issues of material fact with regard to whether Plaintiffs knew about the bankruptcy prior to the transfer of the Property and whether Plaintiffs paid adequate value for the Property. To paraphrase Senator Howard Baker in the Senate Watergate hearings: "What did the Plaintiffs know and when did they know it?" Development of these issues could result in the claim for post-petition transfer being excluded pursuant to exclusion 3 of the Title Policy. Such disputed issues, however, preclude a grant of summary judgment on this issue at this time. Furthermore, as noted above, specifically in footnote 1, the Trial Court did not address whether the claim for post-petition transfer was excluded under exclusion 3 of the Title Policy.

We affirm the grant of summary judgment with regard to the claims for fraudulent transfer as First American made a properly supported motion for summary judgment negating an essential element of Plaintiffs' claim with regard to these claims and there are no genuine disputed issues of material fact. We reverse the grant of summary judgment with regard to the claim for post-petition transfer as this claim is not excluded pursuant to exclusion 4 of the Title Policy, and there are genuine disputed issues of material fact with regard to this claim as relevant to exclusion 3 of the Title Policy.

## Conclusion

The judgment of the Trial Court granting summary judgment to First American is affirmed, in part, and reversed, in part, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed one-half against the appellants, Robert A. Hanks and Lee E. Hanks, and their surety; and one-half against the appellee, First American Title Insurance Co.

_____
D. MICHAEL SWINEY, CHIEF JUDGE